UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LORRAINE SIMMONS,

                        Plaintiff,            **6:17-CV-06628-MAT**

                                                 **DECISION AND ORDER**

        -vs-

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## INTRODUCTION

Represented by counsel, Lorraine Simmons ("Plaintiff") has brought this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On January 30, 2013, Plaintiff filed an application for DIB, alleging disability beginning October 23, 2009, due to: depression; panic attacks; arthritis in hands, right hip, knees, feet, and back; and anxiety. Administrative Transcript ("T.") 68. Plaintiff's

application was initially denied and she timely requested a hearing, which was held before administrative law judge ("ALJ") Brian Kane on March 31, 2016. T. 38-67.

On April 29, 2016, the ALJ issued an unfavorable decision. T. 20-37. Plaintiff's request for review was denied by the Appeals Council on July 11, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2010. T. 25.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from the alleged onset date, October 23, 2009, through her last insured date, December 31, 2010. T. 25. The ALJ noted that Plaintiff had worked after the last insured date, providing child care for her niece; however, this work did not amount to substantial gainful activity. T. 25-26.

At step two, the ALJ determined Plaintiff had the medically determinable impairments of: hypothyroidism; depressive disorder; early degeneration of the knees; thoracic degenerative changes at the T6-T7 level; and obesity through the date last insured. T. 26. However, the ALJ determined that none of Plaintiff's medically determinable

impairments, or combination of medically determinable impairments, were severe. *Id*. Having determined Plaintiff had no severe impairments through the date last insured, the ALJ accordingly found Plaintiff was not disabled as defined in the Act. T. 34.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff argues the ALJ's finding that Plaintiff's depression was non-severe was improper and not based on substantial evidence. Specifically, Plaintiff contends the ALJ made his finding based on (1) a mischaracterization of the State agency review physician's statements; (2) his own lay interpretation; and (3) the improper rejection of certified registered physician assistant ("RPAC") Sandra Williams' opinion. For the reasons discussed below, the Court finds these arguments without merit.

**I. The ALJ Properly Found Plaintiff's Depression was Not a Severe Impairment**

An ALJ is required to follow a five-step sequential evaluation process for determining whether an individual is disabled. If the ALJ finds that a claimant is not disabled at any step of the evaluation process, the ALJ will not proceed to the next step. 20 C.F.R. §404.1520(a). The claimant bears the burden of proving the requirements set forth in the first four steps of the sequential process. *See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)*; Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). Specifically, at step two, the claimant bears the burden of demonstrating that an alleged medical impairment significantly limits her ability to engage in basic work-related functions. If the impairment does not significantly limit her ability to engage in basic work-related functions, that impairment is determined to be non-severe. 20 C.F.R. §404.1522(a). Step two acts as a filter to screen out *de minimis* disability claims and, "as the Second

Circuit has emphasized, is not a demanding standard." *McHugh v. Astrue*, No. 11-CV-00578 MAT, 2013 WL 4015093, at *9 (W.D.N.Y. Aug. 6, 2013) (collecting cases). To be considered severe, an impairment or combination of impairments must cause "more than minimal limitations in [a claimant's] ability to perform work-related functions." *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018).

The Court agrees with the Commissioner that Plaintiff failed to demonstrate that her depression had more than a minimal affect on her ability to engage in basic work-related activities during the relevant period.[1] Specifically, during the relevant period of October 23, 2009 (the alleged onset date) through December 31, 2010 (the date last insured), Plaintiff only sought medical treatment on two occasions. T. 300-01, 306-07. On March 11, 2010, Plaintiff saw RPAC Williams for prescription refills, to discuss her menses, and follow-up on her hypothyroidism. RPAC Williams noted Plaintiff's mood was "great" with no euphoria or grandiosity; she further assessed Plaintiff's diagnosed depression NOS as stable. T. 306. On October 13, 2010, Plaintiff saw Dr. Matthew Brown for cold symptoms. Dr. Brown noted Plaintiff had no unusual anxiety or evidence of depression. T. 300-01. There is no additional medical evidence in the record for the relevant time period.

---

[1] In order to qualify for DIB, an individual must demonstrate disability that began prior to the date last insured. *See Monette v. Astrue*, 269 F. App'x 109, 111 (2d Cir. 2008). Accordingly, Plaintiff's DIB claim required her to show that she had become disabled prior to December 31, 2010.

Plaintiff sought treatment only once in 2011, after her last insured date of December 31, 2010, had passed. On May 23, 2011 Plaintiff saw RPAC Williams and reported her mood was stable on her current medication and she had no side effects from the medication. Again, Plaintiff's mental status examination showed no unusual anxiety or evidence of depression. T. 298-99.

In his decision, the ALJ noted that the record indicates no specialized mental health treatment during the relevant period, other than medication from Plaintiff's primary care providers. He further considered Plaintiff's medical treatment during the relevant period, as noted above, as well as treatment Plaintiff received through January 2013, when RPAC Williams switched Plaintiff's medication from Celexa to Zoloft. T. 31. He noted Plaintiff reported some increased depressive symptoms in August 2012, due to her daughter cancelling her wedding, which resulted in Plaintiff losing a large sum of money. *Id.* referring to T. 290. A review of the August 16, 2012, treatment notes indicate that RPAC Williams suggested Plaintiff seek treatment from a counselor, but Plaintiff declined. T. 291-93. The ALJ noted that RPAC Williams diagnosed stable depression that was worse due to situational factors and continued Plaintiff on her current medication, with a follow-up visit in a year. T. 31. On January 2, 2013, Plaintiff reported she was unable to find a job and was struggling financially. RPAC Williams switched Plaintiff's medication from Celexa to Zoloft. T. 289. On July

9, 2013, Dr. Brown reported Plaintiff's depression was stable and controlled by Zoloft, which she was tolerating well. T. 283.

The ALJ correctly determined that the medical evidence of record did not support the conclusion that Plaintiff's depression was a severe impairment. As discussed above, Plaintiff underwent highly conservative (as well as limited) treatment throughout the relevant time period. Plaintiff's treatment providers noted that her depression was stable and that her mood was "great" (T. 306), and at least one treating source noted no sign of depression at all. Under these circumstances, the ALJ's conclusion that Plaintiff's depression would have only minimal impact on her ability to perform basic work-related functions was reasonable and supported by substantial evidence. *See, e.g., Perez v. Astrue*, 907 F.Supp.2d 266, 272 (E.D.N.Y. 2012) (finding no error with the ALJ's step two determination that claimant's impairment was non-severe); *Donahue,* 2018 WL 2354986, at *5 (finding no step two error where mental impairments cause only mild limitations in functioning); *Terrance v. Colvin*, No. 1:14-CV-00708 (LGF)(MAT), 2017 WL 3393576, at *2 (finding no step two error where claimant's carpal tunnel syndrome did not significantly limit her abilities to perform basic work activities and thus was non-severe).

II. **Consideration of State Agency Reviewing Physician's Opinion**

Plaintiff also argues the ALJ's denial of her claim relied on a mischaracterization of State agency reviewing physician Dr. T. Imman-Dundon's opinion. For the reasons set forth below, the Court disagrees.

On March 12, 2014, Dr. Imman-Dundon reviewed Plaintiff's medical records and concluded there was insufficient evidence to determine the claim of disability prior to the date last insured. T. 68-73. Specifically, Dr. Imman-Dundon noted there was no indication of medical or other opinion evidence from any source to consider. T. 72. As discussed further below, RPAC Williams submitted a Mental RFC Assessment form on February 19, 2014 (T. 333-37), which was included in the records Dr. Imman-Dundon reviewed. However, this opinion was completed more than three years after Plaintiff's date last insured had passed and nothing in the opinion indicated it was retrospective or meant to address the relevant time period of October 23, 2009 through December 31, 2010. Therefore, Dr. Imman-Dundon was correct that there were no opinions, medical or otherwise, related to the relevant time period.

In his decision, the ALJ gave significant weight to Dr. Imman-Dundon's opinion because it was generally consistent with the overall evidence of record, including the minimal treatment Plaintiff received between the alleged onset date and the date last insured. This treatment, as the ALJ pointed out, consisted of two visits to her primary care doctor. T. 33.

The Court finds no error in the ALJ's consideration of Dr. Imman-Dundon's report. In determining a disability claim, "[t]he [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545,

1553 (2d Cir. 1983). The absence of medical treatment is therefore a relevant consideration at step two of the ALJ's analysis. Moreover, and as noted above, it was Plaintiff's burden at step two to present sufficient evidence to establish that she suffered from a severe impairment. *Talavera v. Astrue*, 697 F.3d at 151. In this case, the ALJ properly relied on Dr. Imman-Dundon's opinion that the evidence of record was insufficient to show that Plaintiff was disabled. Plaintiff has not argued nor is there any indication that the record was incomplete or that she had undergone treatment of which the ALJ was not aware.

Furthermore, it is axiomatic that there will be no medical record showing a disabling condition if that condition does not in fact exist, nor is an ALJ obliged to seek such nonexistent evidence out. *See Schaal v. Apfel*, 134 F.3 496, 505 (2d Cir. 1998) (finding ALJ adequately developed the record where there was little indication in the record suggesting claimant had a disabling mental disorder during the relevant period). The lack of any medical records demonstrating that Plaintiff's depression was a severe impairment, as noted by Dr. Imman-Dundon, supports the ALJ's step two determination.

**III. Consideration of RPAC Williams' Opinion**

Plaintiff also contends that the ALJ improperly rejected the opinion of RPAC Williams, which was the only medical opinion of the record. Plaintiff argues the ALJ was required to provide "overwhelmingly compelling" reasons for rejecting RPAC Williams'

opinion and that he failed to do so in his decision. For the reasons set forth below, the Court finds this argument without merit.

In an opinion dated February 19, 2014 (more than three years after Plaintiff's date last insured), RPAC Williams reported Plaintiff had been treating with her since 2003, approximately five times per year.[2] Plaintiff's primary diagnoses were depression and hypothyrodism. T. 333. RPAC Williams reported Plaintiff's clinical findings demonstrating the severity of her symptoms included crying, anhedonia, poor eye contact, sarcasm, irritability, and decreased attention to her personal appearance. She opined Plaintiff's prognosis was fair-to-good. *Id.* RPAC Williams opined Plaintiff would have mild limitations (precluding performance for less than ten percent of an eight-hour work day) in her ability to: remember work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention for two hour segments; maintain regular attendance and be punctual within customary and usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; and travel to unfamiliar places or use public transportation. T. 335-36. She further opined Plaintiff would have mild-to-moderate limitations (precluding performance for eleven to twenty percent of an

---

[2] It is clear that this form was completed by RPAC Williams. What is not clear is whether it was co-signed by Dr. Brown. There is an indecipherable signature on the final page that may be Dr. Brown's. *See* T. 337. However, regardless of the source, the opinion was not relevant to the time period at issue, as further discussed below.

eight-hour work day) in her ability to: perform at a consistent pace without an unreasonable number of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; set realistic goals; and make plans independently of others. *Id.* RPAC Williams identified no moderate or severe limitations; however, she opined Plaintiff would be "off task" twenty-five percent of the time during an eight-hour workday and about four days per month. T. 336-37. Finally, RPAC opined Plaintiff's symptoms could worsen, improve, or remain unchanged if Plaintiff was working full-time. T. 337.

In his decision, the ALJ gave limited weight to the opinion of RPAC Williams, noting it was inconsistent with the evidence of record related to the relevant time period. T. 33. Specifically, RPAC Williams reported she saw Plaintiff approximately five times per year since 2003; however, review of the record reveals three visits in 2009 prior to the alleged onset date, two visits during the relevant period, one visit in 2011, and two visits per year thereafter. T. 33. The ALJ further noted that Plaintiff reported on March 11, 2010 that her mood was "great" on her medication, which she had been taking for five years at that time, and that Plaintiff's diagnoses repeatedly included stable depression. T. 33-34. The ALJ accurately noted treatment records

indicated Plaintiff's treatment had been minimal, conservative, and routine. T. 34.

The Court finds no error in the ALJ's consideration of RPAC Williams' opinion, which was rendered more than three years after Plaintiff's date last insured. "While the existence of a pre-existing disability can be proven by a retrospective opinion, such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status." *Vitale v. Apfel*, 49 F. Supp.2d 137, 142 (E.D.N.Y. 1999). In this case, RPAC Williams' opinion relates to Plaintiff's functioning as of February 19, 2014, and does not clearly refer to her functioning during the relevant time period. Indeed, in her February 19, 2014 opinion, RPAC Williams noted Plaintiff's symptoms were "recently worse than typical for her [and] currently uncontrolled" and that her depression had been previously controlled by her medication. T. 333, 337. These statements indicate that the limitations identified by RPAC Williams were a result of Plaintiff's recently worsening condition, and not reflective of her functioning during the relevant time period. The opinion includes no indication that Plaintiff's symptoms were disabling or uncontrolled prior to Plaintiff's last insured date of December 31, 2010.

As such, the ALJ did not err in affording limited weight to RPAC Williams' opinion. Moreover, this conclusion would hold even if the opinion were co-authored by Dr. Brown and the treating physician rule applied. *See Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (ALJ

properly declined to afford controlling weight to treating physician's opinion rendered four years after the date last insured where it was unsupported by contemporaneous treatment records and inconsistent with the other medical evidence of record). Plaintiff has therefore not shown that the ALJ's treatment of RPAC Williams' opinion constituted reversible error.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 11) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: July 18, 2018
Rochester, New York